BAILES, Judge.
This is an action to determine ownership of 125 shares of stock in the Plaquemines Oil and Development Company. The latter corporation was named defendant in a mandamus suit brought by Elmer C. Feldheim on March 31, 1965, to force Plaquemines to make a transfer of stock certificate No. 83 for 125 shares in the name of Mrs. Dora Henrietta Stengord to the plaintiff. On April 20, 1965, Mrs. Myrtle D. Swayne, individually and as admin-istratrix of the Succession of Mrs. Dora Henrietta Stengord filed an intervention in the mandamus action wherein she sought the recall of the writ of mandamus and dismissal of the action.
As Plaquemines has no interest in the outcome of this action except to ascertain who the rightful owner is of the stock and to follow the judgment of the court, and it appearing that there are two adverse claims to the stock, Plaquemines requested and was granted permission to convert this action into a concursus proceeding.
It appears that Mrs. Dora Henrietta Stengord, hereinafter sometimes called decedent, was originally the owner of two certificates of stock in Plaquemines. One being certificate No. 90 representing ownership of 41 2/3 shares and another certificate being No. 83 representing ownership of 125 shares. In addition to this stock ownership, decedent was the owner of 41 2/3/7098 and 125/7098 interest in royalty rights in and to certain minerals in, on and under lands owned by Plaque-mines in Plaquemine Parish, Louisiana, from which decedent received monthly royalty payments from California Oil Company. On February 29, 1964 decedent transferred ownership of stock certificate No. 90 for 41 2/3 shares plus the royalty interest of 41 2/3/7098 to her nephew, Elmer Feldheim, in consideration of the payments by her nephew of certain debts, including those of a recent illness, totalling $2,300.18.
For the purpose of facilitating the transaction of her business decedent, by authentic act, appointed Elmer Feldheim her agent and attorney in fact.
On or about March 19, 1964, decedent endorsed stock certificate No. 83 to Elmer Feldheim and delivered it to him.
Mrs. Stengord died on December 22, 1964, and eight days later Elmer Feldheim made demand on Plaquemines for transfer of the stock to him. This Plaquemines refused to do because of the prior death of Mrs. Stengord and of the possibility of intervening rights of her heirs and creditors, and of the possible obligation owed to the State of Louisiana in inheritance taxes.
Mr. Feldheim’s position is that he is entitled to have the stock transferred to him for the reasons set forth in the following testimony.
“Q Now, sir, can you explain to me why you were in possession of that stock certificate?
“A Mrs. Stemguard (sic) was actually paying us for many of the deeds which we had done for her over a period of nine and a half years. The stock certificate reference thereto was made to me for those services that we rendered, and we had a confidential agreement not to process this on the book of the *384 Plaquemines Oil & Development Company . . . ”
(at this point his testimony was objected to because it was hearsay).
Further Mr. Feldheim testified that Mrs. Stengord transferred stock certificate No. 90 to him in consideration of his payment of $2,300.18 of Mrs. Stengord’s debts and for the many services performed over the years for Mrs. Stengord by Mr. and Mrs. Feldheim.
The argument of counsel for Mr. Feld-heim is that the law determining the result of this case is found is LSA-C.C. arts. 2589 and 2594 and in LSA-R.S. 12:602, 12:624, subd. A(1), 12:629(3) and (4), and 12:633.
Specifically counsel for claimant Feld-heim argues that title to a certificate of stock is transferred by delivery of the certificate endorsed in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby. LSA-R.S. 12:624, subd. A(1).
In further support of his position he relies on LSA-R.S. 12:629(3) and (4) which states:
“The indorsement of a certificate by the person appearing by the certificate to be the owner of the shares represented thereby is effectual, except as provided in R.S. 12:630, though the indorser or transferor:
“(1) Was induced by fraud, duress, or mistake, to make the indorsement or delivery, or
“(2) Has revoked the delivery of the certificate, or the authority given by the indorsement or delivery of the certificate, or
“(3) Has died or become legally incapacitated after the indorsement, whether before or after the delivery of the certificate, or,
"(4) Has received no consideration.”
Counsel for the administratrix of the decedent’s succession, in brief, states that the only issue is whether the decedent intended to divest herself of the ownership of these 125 shares of stock in favor of a person (Elmer Feldheim) to whom she had entrusted her business by means of a formal power of attorney. No contention is made that Civil Code Articles 2589 and 2594 are controlling as admittedly lesion beyond moiety is applicable to im-movables only.
The trial judge, in determining that title to the 125 shares of stock remained in the decedent, and on her death, in her succession, reasoned in part, as follows:
«He * *
“It is further to be borne in mind that Mrs. Stengord constituted Mr. Feldheim her attorney in fact by power of attorney to transact her affairs.
“The evidence in their case does not preponderate in favor of Mr. Feldheim to effect transfer of title but rather the court believes under the evidence adduced that the endorsement in blank by Mrs. Stengord was apparently a restricted and qualified endorsement by her as principal to her agent in order to facilitate use of the certificate as a means of producing ready cash in case of dire need at a time when Mrs. Stengord might possibly be incapable of acting because of her failing health.
“It must also be noted that while Mr. Feldheim did expend some $2300.00 for the benefit of Mrs. Stengord which he contends was consideration for the endorsement by Mrs. Stengord of Certificate #83 for 125 shares of Plaquemines Oil and Development Co. Stock, he falls short of establishing proof of his contention. It appears that he was in fact transferred 41 2/3 shares of The Oil Co. stock by Mrs. Stengord and transferred ownership on the book of the corporation during Mrs. Stengord’s lifetime, whereas with the 125 shares (certificate #83) no transfer on the book *385 of the corporation was attempted by Mr. Feldheim during the life of Mrs. Sten-gord ; hence these law suits.
“As additional evidence that Mrs. Stengord exercised authority of ownership over the Stock Certificate in litigation herein, on July 26, 1964 (about three months after the endorsement in blank of the Certificate of Stock) she made a promissory note in favor of D. H. Holmes Co. for $4,038.61 (balance due on her club plan account) and on reverse of the note, in part declared ‘.I also agree to send the entire proceeds of my royalty check, which I will receive from the California Company in January 1965 .’
(Emphasis supplied)
“Accordingly the Certificate of Stock #83 representing 125 shares of the capital stock of the Plaquemines Oil and Development Co. presently on deposit in the registry of this Court should be turned over to the administratrix of the Succession of Dora Feldheim Stengord, there to be administered in accordance with law.”
We agree with the trial judge that it was not Mrs. Stengord’s intention to transfer title to the 125 shares to Mr. Feld-heim. She had already more than adequately compensated both Mr. and Mrs. Feldheim for any payment by them of her debts and whatever services they individually or jointly rendered to her. Mr. Feld-heim testified that from February 29, 1964 to the date of trial on April 19, 1971, he had received in dividends and royalty payments the sum of $9,211.15 from the 41 2/3 shares of stock in Plaquemines Oil and Development Company. Admittedly, he had paid only $2,300.18 in obligations of Mrs. Stengord as consideration for the transfer of such stock.
We find as did the trial court, that the stipulatien of Mrs. Stengord for the payment of the promissory note due D. H. Holmes Company is written evidence of her reliance on the ownership of the 125 shares of stock, and is contrary to the position of Mr. Feldheim.
Aside from the fact that we are convinced that the decedent never intended to part with title to the certificate of stock, there was no consideration whatever for the transfer. The record irrefutably supports this conclusion.
With Mr. Feldheim acting as agent for Mrs. Stengord, the burden of proof rested heavily on him to show by convincing proof that Mrs. Stengord intended to transfer the ownership of the stock to him.
Claimant, Feldheim, has failed to discharge this burden of proof.
For the foregoing reasons, the judgment appealed from is affirmed at appellant’s cost.
Affirmed.